[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 14-15435

————————————————

Agency No. 12-064

DEKALB COUNTY,

Petitioner,

versus

U.S. DEPARTMENT OF LABOR,
RYAN PETTY,
DAISY ABDUR-RAHMAN,

Respondents.

————————————————

Petition for Review of a Decision
of the Department of Labor

————————————————

(February 8, 2016)

Before TJOFLAT and MARTIN, Circuit Judges, and ROSENTHAL,[*] District
Judge.

—————————

[*] Honorable Lee H. Rosenthal, United States District Judge for the Southern District of
Texas, sitting by designation.

ROSENTHAL, District Judge:

This petition for review asks us to clarify the standard the Department of Labor's Administrative Review Board applies to an appeal from an Administrative Law Judge's findings and conclusions in a proceeding under the Federal Water Pollution Control Act, 33 U.S.C. § 1367. The petitioner asks us to vacate the Board's ruling reversing the ALJ because the Board applied *de novo* rather than substantial-evidence scrutiny to the ALJ's factual findings. The parties agree that the Board applied the incorrect standard. We conclude, however, that reviewing for substantial evidence would not have changed the result because the Board reversed the ALJ on matters of law, not fact. We therefore deny the petition for review.[1]

## I.    BACKGROUND

Daisy Abdur-Rahman and Ryan Petty filed complaints after they were terminated from their jobs with the DeKalb County, Georgia Department of Public Works. The ALJ held a 13-day hearing on their claims that they were fired in retaliation for whistleblower activity protected under the Federal Water Pollution Control Act ("FWPCA").

---

[1] The parties have petitioned and cross-petitioned for review of related orders on attorney's fees and costs. *See* No. 15-12407; No. 15-15376. Those petitions were consolidated and have been stayed pending resolution of this case.

Abdur-Rahman and Petty worked as compliance inspectors on a program to reduce sewer overflows caused by restaurants improperly disposing of fats, oils, and grease. The County requires restaurants—there are around 5,000 in the County—to have grease traps to collect this type of solid waste. If the traps are missing or fail, fats, oils, and grease accumulate in sewer lines and can cause the lines to burst or overflow, releasing raw, untreated sewage that can seep into surrounding waters. The County's compliance inspectors monitor the traps, process and respond to complaints, and investigate discharges. The Department also assigned Abdur-Rahman and Petty to a committee updating the County's ordinances and procedures regulating this type of solid-waste disposal.

For the first six months after the County hired them in mid-2004, Abdur-Rahman and Petty were probationary employees who could be fired at will. Their immediate supervisor was Chester Gudewicz, the County's Compliance Section Supervisor. Gudewicz, in turn, reported to John Walker.

The probationary period was marked by conflict between Gudewicz and Abdur-Rahman and Petty. All three, and Walker, testified about the conflicts before the ALJ. Problems began when Abdur-Rahman and Petty asked Gudewicz for historical records of sewer spills in the County. They wanted the records for their committee and compliance work so they could identify "hot spots" where sewers had frequently overflowed and use that information to facilitate future

3

enforcement.  When Gudewicz failed to produce the records, Abdur-Rahman and Petty persisted, asking for them on a weekly basis.  By late 2004, Gudewicz was actively discouraging the search, telling Abdur-Rahman and Petty that they were "ruffling too many feathers" and "rocking the boat."  Gudewicz became increasingly frustrated and impatient with their questions, and with them.  He viewed their questions as "insubordination" and would walk away to avoid them.  Walker also resisted the efforts to find the records, telling Abdur-Rahman and Petty that they did not need the data and were being "too thorough or scientific."

This opposition led Abdur-Rahman and Petty to suspect that the County had something to hide.  They told coworkers and supervisors that "the County could get in trouble" with the State for failing to properly document and report spills.  They also came to believe that Gudewicz was unqualified for his position and concerned with preserving the status quo and his job, rather than the program.  They raised their concerns about the County's lack of compliance and enforcement with increasing frequency.  Tensions spiked in January 2005, when, according to Gudewicz's testimony, he overheard Abdur-Rahman call him "incompetent" and "a liar."

Abdur-Rahman's and Petty's suspicions turned out to be unfounded.  The records they sought were available in a nearby office, and the County was investigated by Georgia's Environmental Protection Division, which concluded

4

that the County had reported spills as required by state law.  In the meantime, however, Gudewicz concluded that Abdur-Rahman's and Petty's behavior was disruptive and harmful to workplace morale.  In January 2005, Gudewicz sent Walker two memoranda, one recommending firing Petty, and the other reporting Abdur-Rahman for "argumentative" behavior.  The County fired both in early March 2005.

One month later, Abdur-Rahman and Petty each filed a complaint with the Occupational Safety and Health Administration ("OSHA"), asserting that the County had fired them in retaliation for voicing their concerns and complaints.  OSHA found no violation of the FWPCA's antiretaliation provision.  A number of witnesses testified at the evidentiary hearing held before the ALJ between September 2006 and March 2007.  The testimony frequently conflicted.  The ALJ had to, and did, make credibility judgments in resolving the factual inconsistencies.

The ALJ found and concluded that Abdur-Rahman and Petty had engaged in activity that the FWPCA protects, but that this activity was not the motivating factor behind the decision to terminate their employment.  The ALJ found and concluded that the County showed that it would have terminated Abdur-Rahman and Petty "even had they not engaged in protected activity because managing them was above their supervisor's [Gudewicz's] means and they did not fit the peculiar

culture [of their workplace]." The ALJ dismissed Abdur-Rahman's and Petty's complaints.

On appeal, the Administrative Review Board reviewed the ALJ's findings and conclusions *de novo* and reversed. The Board agreed with the ALJ's finding that Abdur-Rahman and Petty had engaged in protected activity by pressing for the records and by voicing concerns about the County's regulatory compliance and enforcement when they met resistance. But the Board found that this activity was *a* motivating factor—not *the* motivating factor, as the ALJ had incorrectly stated— in the County's decision to fire them. The Board also agreed with the ALJ's factual findings that the County had both legitimate and retaliatory reasons for its termination decision and that the reasons arose from the same protected activity. The Board rejected the ALJ's legal analysis, however, "arriv[ing] at [the] different legal conclusion" that the County's legal and illegal motives could not be separated and the County had not shown that it would have fired Abdur-Rahman and Petty absent their protected activity. The Board remanded to the ALJ to decide the remedy for the retaliatory terminations.[2] The Board affirmed the ALJ's post-

---

[2] On remand, the ALJ asked the parties whether it needed to reopen the record to decide the remedies issue. In a June 2011 letter to the ALJ, the County asked the ALJ not to reopen the record. The County argues in this appeal that although on remand it had urged the ALJ to keep the record closed, the ALJ's limited reopening of the record denied the County an opportunity to present evidence showing a failure to mitigate damages. The County did not raise this lost-opportunity issue until its June 2012 appeal to the Board, not to the ALJ. The County cannot complain on appeal about an alleged error it invited. *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1283 (11th Cir. 2015).

remand decisions, including the reinstatement and back-pay awards, and the County petitioned this court for review.  We have jurisdiction under 33 U.S.C. § 1367(b) and 33 U.S.C. § 1369, and we deny the petition.

## II.    THE STANDARD OF REVIEW

An appellate court "must review the [Administrative Review Board's] decision pursuant to the standard of review outlined in the Administrative Procedure Act."  *Stone & Webster Constr., Inc. v. U.S. Dep't of Labor* ("*Stone & Webster II*"), 684 F.3d 1127, 1132 (11th Cir. 2012).  Legal conclusions are reviewed *de novo*, keeping in mind that agencies often receive deference in construing the statutes they administer.  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 104 S. Ct. 2778 (1984).  The Board's factual findings are reversed only if "unsupported by substantial evidence" on the record as a whole.  5 U.S.C. § 706(2)(E) (APA standard for formal adjudications); *Stone & Webster II*, 684 F.3d at 1132.

"The substantial evidence standard limits the reviewing court from deciding the facts anew, making credibility determinations, or re-weighing the evidence."  *Stone & Webster II*, 684 F.3d at 1133 (quotation marks omitted).  When "we review administrative findings of fact under the substantial-evidence test, [we] will reverse such findings only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough . . . ."  *Indrawati v.*

*U.S. Att'y Gen.*, 779 F.3d 1284, 1304 (11th Cir. 2015) (quotation marks omitted).

Substantial evidence is "more than a mere scintilla.  It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quotation

marks omitted).

Since 2007, these same standards have applied to the Board's review of the

ALJ's findings and conclusions in an FWPCA claim.  "[I]n 2007, the Secretary of

Labor revised the [Board's] standard of review of an ALJ's factual findings . . .

from *de novo* review to substantial evidence review."  *Stone & Webster*, 684 F.3d

at 1132; *see also* 29 C.F.R. § 24.110(b) ("The [Board] will review the factual

findings of the ALJ under the substantial evidence standard.").  The parties agree

that the Board incorrectly reviewed the ALJ's factual findings *de novo*.  The issue

is the effect of that error.

## III.   DISCUSSION

The elements of an FWPCA retaliation claim are that (1) the employee

engaged in protected activity, (2) the employee suffered an adverse action, and (3)

the protected activity was a motivating factor in the adverse action.  *Kaufman v.*

*Perez*, 745 F.3d 521, 527 (D.C. Cir. 2014).  The parties agree that Abdur-Rahman

and Petty suffered an adverse action.  The County challenges the Board's

determinations that they engaged in activity the FWPCA protects and that their protected activity was a motivating factor in the decision to fire them.

## A.    Protected Activity

The FWPCA makes it unlawful to "fire, or in any other way discriminate against . . . any employee . . . by reason of the fact that such employee . . . has filed, instituted, or caused to be filed or instituted any proceeding under this chapter . . . ." 33 U.S.C. § 1367(a).  The Secretary has interpreted "proceeding" to shield from retaliation employees who make "informal" or "internal" complaints to supervisors and coworkers, even if those complaints ultimately lack merit.  *Stone & Webster Eng'g Corp. v. Herman* ("*Stone & Webster I*"), 115 F.3d 1568, 1575 (11th Cir. 1997), *superseded in part by regulation on other grounds*, 29 C.F.R. § 24.110(b); *Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 931–33 (11th Cir. 1995).  The County does not challenge the Secretary's interpretation.

Substantial evidence in the record shows that, as the ALJ found and the Board agreed, Abdur-Rahman and Petty engaged in protected activity.  They repeatedly sought the County's historical records of sewer spills, believing that the records would be helpful to the County's enforcement and compliance work.  The requests were rebuffed, and they were discouraged from pursuing the records.  The ALJ found, and the Board affirmed, that Abdur-Rahman and Petty "came to suspect the County might be hiding the information."  They told coworkers and

9

supervisors that "the County could get in trouble" with the State as a result, and Abdur-Rahman confronted Gudewicz about why hot spots continued to exist. Although the suspicions turned out to be unfounded, the record shows a good-faith basis for voicing them. The FWPCA protects activity undertaken with a reasonable, good-faith basis, even if it is incorrect. *Stone & Webster I*, 115 F.3d at 1575; *Passaic Valley Sewerage Comm'rs v. U.S. Dep't of Labor*, 992 F.2d 474, 478–79 (3d Cir. 1993). The record shows ample support for the ALJ's and the Board's finding and conclusion that Abdur-Rahman and Petty engaged in protected activity.[3]

## B.    Motivating Factor

The Secretary interprets the FWPCA to incorporate the burden-shifting framework used in mixed-motive employment-discrimination cases. *See* 76 Fed. Reg. 2808-01, 2811 (Jan. 18, 2011) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775 (1989); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S. Ct. 568 (1977)). The employee has the burden to show "by a preponderance of the evidence that the protected activity caused or was a motivating factor in the adverse action alleged in the complaint." 29 C.F.R. § 24.109(b)(2). A motivating factor is "a substantial factor." *Mt. Healthy*, 429 U.S.

---

[3] We need not—and do not—address whether Abdur-Rahman and Petty also engaged in protected activity at other times during their brief employment.

10

at 287, 97 S. Ct. at 576.  "In saying that [the protected activity] played a motivating part in an employment decision, we mean that, if we asked the employer at the moment of the decision what its reasons were and if we received a truthful response, one of those reasons would be that the . . . employee [engaged in protected activity]."  *Price Waterhouse*, 490 U.S. at 250, 109 S. Ct. at 1790 (plurality opinion).

"If the [employee] has demonstrated by a preponderance of the evidence that the protected activity caused or was a motivating factor in the adverse action alleged in the complaint," the burden shifts to the employer.  29 C.F.R. § 24.109(b)(2).  "[R]elief may not be ordered if the [employer] demonstrates by a preponderance of the evidence that it would have taken the same adverse action in the absence of the protected activity."  *Id.*; *see also Mt. Healthy*, 429 U.S. at 287, 97 S. Ct. at 576.  The employer must "separate its legitimate rationale from its prohibited rationale . . . [to] prove its decision *would* have been the same absent [the employee's protected activity]."  *Passaic*, 992 F.2d at 482.  "It is not enough that the evidence prove[s] that the [employer] *could* have in retrospect made its employment decision on legitimate grounds."  *Id.*  "The risk that the illegal and legal motives behind employee termination merge and become inseparable is placed on the employer."  *Id.* (citing *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393,

11

103 S. Ct. 2469 (1983)).[4]  The County has not challenged the Secretary's interpretation.

Applying this interpretation, the Board identified errors in the ALJ's legal analysis.  The ALJ asked whether Abdur-Rahman and Petty had shown that their protected activity was *the* motivating factor—rather than *a* motivating factor—in the decision to fire them.  The Board concluded that Abdur-Rahman and Petty had shown that their protected activity met the proper causation test.  Although the Board described its review of the ALJ's factual findings as *de novo*, substantial evidence—evidence that the ALJ also relied on—supports this conclusion.  The Board correctly applied *de novo* review in rejecting the ALJ's legal conclusion that the record had to show that the protected activity was *the* motivating factor in the County's decision.

The ALJ also erred in failing to put the burden on the County to show that it would have made the same decision absent the protected activity.  The Board accepted the ALJ's factual findings, including that Gudewicz's poor management

---

[4] This analysis differs from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), and its progeny, under which the burden of persuasion "at all times" remains with the employee, *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093 (1981).  *See generally Watson v. Se. Pa. Transp. Auth.*, 207 F.3d 207, 215–16 (3d Cir. 2000) (Alito, J.) ("[T]he *Price Waterhouse* shift in the burden of persuasion does not apply to 'pretext' cases, in which plaintiffs prove intentional discrimination indirectly through the burden-shifting paradigm set forth in *McDonnell Douglas* . . . ." (citing *Price Waterhouse*, 490 U.S. at 277–78, 109 S. Ct. at 1805 (O'Connor, J., concurring))); *cf. Pulliam v. Tallapoosa Cty. Jail*, 185 F.3d 1182, 1186–88 (11th Cir. 1999) (distinguishing a pretextual-discrimination claim from a mixed-motive discrimination claim).

12

and supervisory skills were a factor in his decision to recommend firing Abdur-Rahman and Petty. These findings were supported by substantial record evidence. The Board rejected the ALJ's legal analysis because the County had not met its burden to separate the retaliatory from the nonretaliatory motives for deciding to fire the employees. The Board reversed the ALJ's legal conclusion because, given the intertwined nature of the legitimate and retaliatory reasons, the County had not met its burden to show that it would have reached the same decision absent the protected activity.

The parties agree that the Board incorrectly reviewed the ALJ's factual findings *de novo*. Ordinarily, "a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *INS v. Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353, 355 (2002) (per curiam). In *Stone & Webster II*, 684 F.3d at 1133, we remanded because the Board "acknowledged that it was bound by the substantial evidence standard" but, in effect, reviewed the ALJ's factual findings *de novo*, "show[ing] little deference to the ALJ's findings with which it disagreed, and . . . disregard[ing] the ALJ's conclusions supported by substantial evidence in the record." Here, in contrast to *Stone & Webster II*, "the . . . issue is legal, not factual." *Calle v. U.S. Att'y Gen.*, 504 F.3d 1324, 1330 (11th Cir. 2007). Remand to the agency is unnecessary because "the agency would reach

13

the same result upon a reconsideration cleansed of errors." *Lin v. U.S. Dep't of Justice*, 453 F.3d 99, 107 (2d Cir. 2006).

The Board properly reviewed the ALJ's legal conclusions *de novo* and held that the ALJ incorrectly applied the motivating-factor and the *Mt. Healthy*/*Price Waterhouse* burden-shifting framework. The Board's decision would have been the same had it reviewed the ALJ's factual findings for substantial evidence rather than *de novo*. We therefore need not remand.

## IV.    CONCLUSION

We deny the County's petition for review.

PETITION DENIED.